Good afternoon. May it please the Court, my name is Erwin Chemerinsky and I represent the appellants. The issue before this Court can be decided by a basic principle. When a case is removed from state court to federal court, the results should be the same as were litigated in the state court. In fact, this very issue is resolved by footnote 31 in Alaska Pipeline v. Wilderness Society. There the Supreme Court quotes with approval a 1928 Supreme Court case, Sioux County v. Shorty Company, and the words are so important I want to begin by reading them to the Court. There the Supreme Court said, it is clear that it is the policy of the state to allow plaintiffs to recover an attorney's fee. It would be at least anomalous if this policy could be thwarted and the rights so plainly given destroyed by the removal of the clause to the federal courts. In Alaska Pipeline, the Court after quoting that then said, we see nothing after Erie requiring a departure from this result. I want to make two points this afternoon. Can you give me the exact cite on that please? Sure. The people of Sioux County v. National Shorty is 276 U.S. at page 243, and the Alaska Pipeline quote from it in the language that I read is in footnote 31. Okay. Thank you. Now I take your premise that with respect to substantive law, the answer is supposed to be the same in federal and state court. And it's really independent as to whether or not it's diversity of jurisdiction or federal question jurisdiction, the answer is supposed to be the same irrespective of the source of subject matter jurisdiction. I get that. How do we know that attorney's fees are not, I don't want to say available, are not properly available in state court? There's to say there are two ways to make this the same. You don't get attorney's fees either place or you get them both places. So just saying they're the same doesn't get you there. But the United States Supreme Court has long said that federal courts shouldn't deny jurisdiction just because state courts are available. And as I was saying... No, that's not the question. Then I misunderstood, Your Honor. I'll start with my agreement with your basic premise. That's right. Erie tells us we're supposed to get the same answer in federal and state court. Yes. You say that the answer is, and it should be the same in both, that you get fees. That's correct. But why do we get fees? I understand the same part, but what's the argument as to why there should be fees? It's possible that there shouldn't be CVs available in state court either. That's also possible. I was going to say I had two points. The first point was that had this case been litigated in the state court, then it's clear that plaintiffs would have gotten fees under 1021.5. Well, it's clear. How do we know that it's clear and how do we know that the state court would have been correct in so doing? As to the first point, I think that here Maria P. v. Riles is constructive. Because like this case, it was a suit that was brought under Section 1085 to enforce a federal law, the Federal Education Records Privacy Act. And there, the California Supreme Court, in Justice Broussard's opinion, said that there should be attorney's fees when there is an But Justice Broussard might have been wrong. But I think here you're obligated to follow the law of the state. But we're not necessarily obligated to follow the law of the state because to some degree, I'm not making up my mind on the question, but I'm trying to sort my way through this sort of in the abstract. Whether or not you get attorney's fees to the degree that attorney's fees are available or not available, that very much affects the degree of enforcement. So it's possible. I don't say is or isn't, but it's possible that Justice Broussard and the California Supreme Court misinterpreted federal law in saying that as to federal law, a California attorney's fees statute governs. But I think this then would go to the second point that says that the fact that this was a state law cause of action, Section 1085, to a large extent was state law that determined the recovery. And this Court has said on so many occasions that the recovery of attorney's fees under state law is a substantive legal question. And so since the state would have awarded attorney's fees here under Maria P. v. Riles, I think the federal court is obligated to do so under the principles of ERIE. Well, if we agree that the state got it right with respect to the implications of federal law with respect to the underlying federal statute. Yes, Your Honor. But I think here, if you look at the language of 1085.5, it's specifically 1021.5, it specifically says that this attorney's fees are coverable if there's a substantial benefit to the public or a large segment of it. This was a benefit of $3 billion to 6.7 million people. No, I understand that. I'm wrestling with some of the same issues that my colleague is. Here we have a situation, and as you know, I was involved in this case from the very beginning, so this feels like a child to some degree. We are dealing, are we not, in this case with pure federal law, right? It is not pure federal law. I know you say there is some contract action, but putting that aside for the moment, everything else is federal, right? If there were no supremacy clause, if there were no Medicaid statute, we wouldn't be here, would we? That's true, Your Honor, but let's focus on what is the state law, and then I do want to leave the time for the interviewers, if that's okay. Sure, I understand. Let me intervene for just a moment here. Of course. We'll make sure that everybody gets a chance to say what they need to say. We may take you over time, but we won't use that to cut into your time, so relax. Thank you. Okay. Your Honor, this is the cause of the action under Section 1085 of the California Critical Procedure, just like Maria P. v. Riles. But that, forgive me, that's like a private attorney general statute, right? But what's important here to remember is the state of California argued throughout these proceedings that there is no cause of action under the supremacy clause. So the only cause of action was a state law cause of action. Also, it was this court that held... Help me with this, Dean. Admittedly, the Supreme Court vacated the Douglas decision because of the change in the law and said, hey, this is a new set of facts, let's vacate this, let's send it back, and then you all settle. But when we originally litigated it and the time that was spent on this, it was on the basis that the supremacy clause gave you a cause of action, and that's why the injunction was entered in the first place, right? Yes, Your Honor. That's why there was federal question jurisdiction. But this is a situation just like Merrill Dow or just like Grable, where it's a state law cause of action. You have federal laws as an essential component. But I think it is important that the state of California argued throughout these proceedings that there was no cause of action directly under the supremacy clause. There was only the ability to sue because of the state statute. Which is why I think there's no 1983 claim here. Pardon? Which is why there's no 1983 claim. That's exactly right. There's no 1983 claim here. That's why it is the state law cause of action that's the basis of not 1983. Also, it's important here that this Court said that the reason the $70 million could be recovered in retroactive benefits is that under state law there was a waiver of sovereign immunity by removing the case. But I think the most important thing is the many decisions of this Court that have specifically said that state attorney fee statutes are substantive law for purposes of ERIE. And I think that resolves the issue. And it's your position that that is, if you will, a cause of action in and of itself. You don't have to have an underlying, in this case, a supremacy clause claim. Is that correct? 1085 is the cause of action. It's the legal entitlement to relief on proof of specified fact. 1983 is not a cause of action. The supremacy clause, the Supreme Court says, isn't in itself a cause of action. And as I've said a couple times, the state repeatedly said that there's no cause of action directly under the supremacy clause. Well, state lost until the Supreme Court vacated on the, based on the change circumstances of the amended statute, right? That's correct. States had a lot of stuff, but they lost. And they lost because of the supremacy clause argument, right? But the supremacy clause argument comes to this Court. It's filed in state court. It's removed from state to federal court because federal law is an essential component under state law. And that's why I think, and I'll then leave the rest of the time for the questions from now, that's why I think, Judge Fletcher, the answer to your question is that Maria P. v. Ryle says that under California state law, when there is a 1085 cause of action and it is to enforce federal law, attorney's fees are available under California state law. That's an interpretation of the state statute. And that I do think is binding on this Court under Erie Railroad v. Tompkins. Okay. Why don't we, now, how much time did you, it was going to be five, five, and then save five? Was that going to happen? I was going to use five and save about two and a half for rebuttal. And the other side, you're a partner, or you're... Yes. The other attorney... We'll do the same. Okay. Why don't we put 10 minutes on the clock, which will take us back to where we would have been had you been able to comply with your plan. Thank you. And we're doing that because you had to come in from the Burbank Airport. And you should have taken an earlier flight. Okay. This is Craig Langeau, Cooper, Lundy, and Bookman on behalf of the interveners. We were here in 2009 when you rendered the main appellate decision. And in that important appellate decision, you ruled on the cross appeal that the removal of the action to state, excuse me, federal court from state court of the 1085 writ was consequential. You not only held that they had waived their federal immunity, you then took great care how the state court, how the superior court would have considered the action under 1085 and concluded that under state law principles, which were recently reaffirmed two months ago, this is not treated as a damage action and is actually treated as an enforcement under state and federal law. Can I get you... Can I get a premise just to be... I know where I am here. I'm looking at the settlement agreement, attorney's fees and costs. C1A refers specifically to attorneys Lynn Carmen and Stanley Friedman. C1B refers to interveners and the law firm. Are you under... I'm under B. You're under B. We're under B. So neither one of you is coming under C. Well, you're eligible under C because it says in the attorneys, but... But you specifically are under B. Under B, and it was under 1021.5 that we argued... Following up on my colleague's question, under B, under A and B, it's your claim that you have a right to get attorney fees directly from the state if you're successful, right? That's correct. Whereas under C, the only claim would be against the distributees of monies on a community, on a common benefit theory. Is that correct? That's correct. And that piece was dealt with in a separate portion of Judge Schneider's ruling and ultimately settled with the members, I guess you would say, that ended up paying those fees. So under B, under 1021.5, we believe that the federal court, the district court, committed legal error by too narrowly focusing on whether the underlying claim was a pure question of Medicaid Act is a federal statute. But I don't think under your precedent that that ends the analysis because the test, as I'll explain, seems to be more accurately described as the test is whether state law was a basis for an aspect of the case on which the plaintiffs ultimately prevailed. Help me with this. The statute, the attorney fee statute here, for you to be successful, that has to be the cause of action, not that you get attorney fees because something else is a cause of action. Do you agree with that? I think it has been treated that way once it was codified, yes. But in this instance, we had a 1085 cause of action, which, as counsel has explained under Maria P., has long since been a basis for an award under 1021.5, even if it was a federal constitutional or statutory law that was enforced. Here, I wanted to just remind the court that we not only prevailed on a particularly important part of state law, namely the sovereign immunity, that resulted in the remand that distributed $70 million, which frankly would have been best treated as a partial withhold, and we might not have had this argument. But that's water under the bridge. You brought that motion, and that didn't work out so well for you. Well, to say it was a motion I think is a little bit... Made the request. There was a request made. It was not briefed. It was summarily dealt with as something that could be dealt with later by the district court. Well, the district court's order leaves me with no question that she thought she could deal with it later at the end of the case. And I think that was partially because the state wasn't exactly candid about their position on 1021.5. They rather gratuitously objected to the withhold because they had no stake in it, inaccurately characterized the law on common benefit by suggesting that the absence of a class action certification was somehow fatal. That was incorrect as a matter of law. But what the judge says, her order says, nobody's told me why I can't do it, so you're faulting the state for its representations. And I've looked carefully at the state's representations, but I don't see where there was a plaintiff's lawyer explaining, hey, there's going to be a problem at the end of the day. I'm not sure it matters, but the record to me reads like nobody anticipated this outcome. You're quite correct, Your Honor. It was not briefed. It was not argued. It was a status conference. It looks like a mistake. And so when the state said, don't worry, what I think I read, and really I'm inviting you to let me know if I'm misunderstanding the history here because I'm a newcomer to this case, unlike Judge Smith, but it looked to me like there was a status conference and the state had put this what sounded like a pretty complicated mousetrap in motion to make these reimbursements of 10% to lots and lots and lots of providers and said don't interrupt that process. That will really throw a monkey wrench into things. And I think that was the basis of the state's objection. Do I have that wrong? That is quite correct, Your Honor. I think that's how we got here. But we never had much doubt that 1021.5 applied as a result of your decision in 2009, which had used state law as the basis for the very distribution of the funds. And we believe that under your court's precedent that's more than sufficient to allow for an award under 1021.5. In your view, had you stayed in state court and the state had not removed to the federal court, you had a cause of action under 1085 and you were entitled to attorney fees under 1021.5. Is that right? That's correct. And so your position, I gather, is if that was true in state court, then ipso facto it has to also be true in federal court. Well, when the case is removed, I think it would be for the very reasons that the people of Sioux County, the Supreme Court long ago held, it would be anomalous if you could thwart the policy of the state on attorney's fees by simply removing. Furthermore, this court's- Well, it would encourage forum shopping and it would discourage people from taking on this kind of public interest work. And there's a lot of policy concerns that are animated here. I find very, just speaking for myself, I find very concerning. But I don't understand how you get around ALIESCA. Well, we think the fact that the- ALIESCA doesn't stand for the proposition that, as interpreted by this court, it appears that if this is purely a federal law question with no element of state law at all, then the result that the district court found is correct. But that is not what happened here. We wouldn't have had the $70 million to be playing with at that moment in 2010. Because of 1085. 1085. And your precedent, it's cited in the Klein decision, which is very recent, Jones v. City of Los Angeles found that the mere pleading of a state cause of action was sufficient to award attorney's fees under 1021.5. Even though they never got to the state law claim, it wasn't adjudicated one way or the other. The case settled, and an award under 1021.5 was found proper by this court and affirmed by the Ninth Circuit, by the district court and affirmed by the Ninth Circuit. And that's the difference between ALIESCA and this one from your perspective.  Because in ALIESCA, it was purely federal law. Here you think 1085 gives you a state cause of action which distinguishes it. We've had state causes. I've been prosecuting state causes of action under 1085 for 40-plus years. And that's mainly enforcing federal law and resulting in the award of attorney's fees if we are successful. This, in our view, is no different. We not only pled the state cause of action, we effectively prevailed, as your honors are aware, because the vacating of the decision by the Supreme Court didn't in any way undermine your ruling. And that was all bottled up and packaged in the final settlement where everything that we had sought we obtained, including the retrospective. There was a reason this was brought in state court, and retrospective relief is a very important element of that. Before you leave the podium, could I ask on a different track, if we were to find that it was an abuse of discretion to not, I've been calling it a motion, but to not create a common fund, at this point in time, is there anything we should do about that or can do about that to restore the status quo? I think that, in our view, the only practical result is to resolve the policy issues and the legal issues in favor of the petitioner's and intervener's request under 1021.5, because there are important policy considerations and they shouldn't, it shouldn't change the result. Well, I understand that argument. I'm making, I'm asking a different inquiry, and that is that, of course, the court doesn't have jurisdiction over non-parties who received this 10%, and arguably were over-reimbursed, if you will, but the court has jurisdiction over the commissioner. And just as the payout was... Now I understand your... We would not be certainly opposed, and it's certainly doable to reward the fees out of future payments. The only problem is that the identity of the providers changes over time, Your Honor. It's been 10 years, and now... Well, then how would your be under the attorney fee subsection? If you look at C, it makes it clear that the state, when there is a common benefit attorney fee claim, it's illegal under that contract to require the state to change its pattern of payments and so on and so on. I gather, assuming this very point, that somebody was going to try to change the future payments. But that doesn't affect you, though, does it? Are you a client under B, or does C also apply to your attorney fee settlement? Well, I believe you run into the same problem. Yes, you have jurisdiction over the director, but whether that's sufficient to pull the money back from the providers, I think, was the problem. Certainly, they would have to be given notice and an opportunity to be heard. It's not an easy problem to fix here. No, and we dealt with that on the hospital side, Your Honor. And forgive me, what? Under C, we did actually have a separate motion for the hospitals. The court was bothered by the lack of jurisdiction, and we did receive an encouragement to settle by the district court, and we did. And they voluntarily paid it, but we were dealing with 150 providers as opposed to maybe 100,000. Right. Given the C aspect of it, and I don't want to, I think all of us will probably be suggesting this one point or another, this is the problem of doing surgery with a meat ax and something more specific. At least from your perspective, is there any interest in sitting down with the state to see if you can mediate this at some point here? I know you didn't get it done before, but a lot of water under the bridge. Do you think since there's a possibility of pulling money back from recipients, that's something that should be explored? Well, you know, I never am one to dismiss any option to solve a problem. That's how we solved this case and settled it. We spent two years in mediation at the Ninth Circuit with the auspices of the Ninth Circuit Magistrate. If they were as animated in opposing the withhold for $100,000 of fees back in 2010, I'm suspecting that we will run into the same opposition, that it's just too troubling. But I, you know, I don't think as a... Was that, forgive me, was that, interrupting, was that mediation before or after the district court had said into the record, I'd give you fees if I could, you did a good job and you deserve fees? This was the underlying merit settlement that occurred just before that. The sequence was we settled the underlying merits, we reserved the right to pursue attorney's fees, and then we had the results from the district court. When she encouraged settlement discussions, it wasn't with the state at the attorney's fee motion, it was with the hospitals, and we were, through auspices of CHA, we were able to work that out. But that was different than working with the state. I see. Okay. We've taken you well over time. Thank you, Your Honor. Why don't we put one on rebuttal, put five minutes on the clock for rebuttal, because part of it's our problem in asking the questions, and let's hear from the other side. Thank you, Your Honor. Don't we have one more, or just the two of you? Just the two, okay. I thought you had one more, and he was looking anxious, but maybe not. The state's wondering if she's ever going to be heard at this point. Okay. Your turn. Good afternoon. Susan Carson from the Office of the Attorney General, representing the Director and the Department of State Hospitals. Because appellants are not entitled to seek fees under either the Supremacy Clause or the Medicaid Act, they now attempt to recast their claims as state law claims. Let me ask you the following, if I could. This will help me kind of orient my thinking. Is there a cause of action directly under the Supremacy Clause? In terms of enforcing subsection 38? No. I'm asking you, can somebody bring a cause of action solely based on the Supremacy Clause? In general, a theory, yes. Is that a cause of action under the Supremacy Clause? I do not believe so, Your Honor. I do not believe it's a substantive cause of action. I believe it is a procedural mechanism just as 1983 is and just as 10 is. What was the cause of action in federal court? I'm sorry? What was the cause of action in federal court? The plaintiffs and the intervenors brought an action under the Supremacy Clause to enforce Section 1396AA30A of the Medicaid Act. Okay. So you just answered Judge Fletcher's question by saying there's no such thing as a cause of action under the Supremacy Clause, and I'm asking what was their cause of action? The cause of action was violation of subsection 38 of the Medicaid Act. That was the substantive cause of action. But that's going to be my second question. If someone just simply brought suit under Section 30A, is that a cause of action? No, because the Medicaid Act is not self-enforcing. So you need something else. Right. You need a procedural mechanism. And what was the something else in this case? In this particular case, it was the Supremacy Clause. No. You told me that you can't bring a suit under the Supremacy Clause. So it has to be something else. I'm sorry, Your Honor. I guess I didn't understand your question. Yes, you may bring a suit under the Supremacy Clause, but you must have some substantive. . . This is difficult because in this particular case, the Supremacy Clause was used to enforce a statute. Generally, the Supremacy Clause is used to defend, and if a party is going to be potentially prosecuted under state law, they may bring a case to say that that would be in violation of the Supremacy Clause because some other federal law. . . So you're telling me that the combination of the Supremacy Clause and Section 38 is a cause of action under federal law? Well, it isn't any longer because of the U.S. Supreme Court's decision in Armstrong, in Douglas and in Armstrong. But this panel, when it ruled on these issues, said, yes, you could enforce Section 38 under the Supremacy Clause, but that is no longer the case. So if that's no longer the case, so what cause of action is possible? I think you need something else then in addition. What is that? In fact, it has been determined that Section 38 is not enforceable, privately enforceable. You say it is or it is not? I'm sorry, I just didn't. I'm sorry, it is not. It is not. So there's actually a state court of appeal decision that was recently decided, Santa Rosa Hospital v. Kent, in which the state court of appeal ruled that Armstrong applied in state court as well, and therefore you could not use 1085 to enforce 38. Does that mean if they had filed this suit tomorrow, the very same suit, you wouldn't have been able to remove it? No, we could have removed it. It could have been. It's still federal law. It's still federal substantive law. This court would still have federal question jurisdiction. What I'm saying is if they filed in state court and the matter stayed in state court, they would not have been successful. That now it is not. 38 is not enforceable, and this court's decision in Manos Pharmacy Clare made it clear that the action is an APA action against the federal agency. Let me ask you this then. Your opponents suggest that 1085 is a cause of action that could be used to enforce 38. What's your position on that? Well, first of all, 1085 is not a cause of action. It is not a substantive claim. The district court, and she was correct, found that 1085 is merely a procedural mechanism, much as Section 1983 is in federal court, and it conveys no substantive rights. But 1983, let me back up and say it this way. Could this have been enforced via a 1983 action? No, Your Honor, because of this court's decision in Sanchez v. Johnson in 19, I mean, excuse me, in 2005. At the time it was brought, could it have been brought as a 1983 action? No, Your Honor, because this action was filed in 2008, and the Sanchez decision precluded them bringing it under 1983. And so what's the rationale for why it could not have been brought as a 1983 action? Well, first of all, this court's decision in Sanchez v. Johnson, which found that No, I'm asking for not the name of the case. I'm asking for the rationale. Well, the rationale is because it does not confer any private rights of action, and Congress did not intend to create a right to enforce privately. But that takes me back to my earlier proposition as to whether or not you've got a lawsuit based on either singly or together the Supremacy Clause in Section 38. I don't think you've got a private cause of action to the combination of those two things. That's correct, Your Honor, given the that's produced $70 million. At the time, Your Honor, it was recognized. This court, this panel, with Judge Reinhart, found that you could use the Supremacy Clause to enforce 30A. And at that time, this court found that the state's affirmative defense of sovereign immunity did not apply. So if the law at that time was as you've described, and later on the Supreme Court changed its, or shall I say adopted a different perspective, does that undermine the fact that attorney fees might have been due based upon the success of the earlier claim when the law was not different? I don't believe so. I don't believe so, Justice Smith. I don't believe that the plaintiffs were ever entitled to recover attorney's fees under federal law. This case was solely litigated under federal law, under federal question jurisdiction in federal court. Well, you get federal question jurisdiction sometimes when the cause of action is not a federal cause of action. You get removal jurisdiction when there's a substantive federal issue in the case, not necessarily that it has to be the federal cause of action. Well, that's correct, Your Honor, if there is a substantive state law claim, and this court exercises supplemental jurisdiction under 1367. But that was not the case here. That's not my point, but let me ask you a different question. If this case had stayed in state court, and the plaintiffs had prevailed in state courts, there's no removal at all, would they have been entitled to attorney's fees? Well, I believe that they probably would have been entitled to seek fees. I don't believe they would have been entitled to fees given the requirements under 1021.5. Say more. Say more. What do you mean? No, but the fact that they potentially could have received fees under state law in state court where California is a separate sovereign and has different rules for attorney's fees does not somehow transform this and change federal law in federal courts. Yeah, but that's a different point. I want to stay on my precise point, and then you can move on to your closely related point. I'm asking very specifically, would they have been entitled to attorney's fees had the case stayed in state court? I don't believe they would have been entitled to the fees, but I believe they would have been able to seek the fees. Why do you think they wouldn't have been entitled to fees? Because essentially the pecuniary interest in this matter far exceeded any attorney's fees. By the Palin's own characterization here, this case is worth $397 million, and under California law and everything I've ever seen under 1021.5, that that would not have permitted them. That is truly, for a case like Maria P., where there's no pecuniary interest at all, and it is truly a civil rights action or an action in which they're seeking injunctive, the parties are seeking injunctive. Oh, I see. You're saying that under its terms, the statute would allow fees when you can't get it out of the recovery. That's your answer? Basically, yes. And you're just interpreting the California statute? Yes. Right. Yeah, yeah. But California statute, had it been written differently or had it been construed differently from the way you're construing it, California statute would permissibly have allowed fees. Yes, because I believe 1021.5 says in any action. So California, a different sovereign, has a different law than 1021. How do you reconcile that with the premise with which Dean Chemerinsky began, which is to say attorneys' fees are substantive law. You're supposed to get the same answer as substantive law in federal and state court. Because attorneys' fees are related to the substantive law that is the basis for the action. So here, just to call, so in other words, if you had, if this court had exercised supplemental jurisdiction and then there had been a substantive state law claim, this court would have been able to consider whether attorneys' fees were available if the plaintiffs had prevailed on that particular cause of action. So the Klein case is less. I understand the Klein case, but I'm sure, I don't think you took my point. We heard from Dean Chemerinsky, and we can agree with it or disagree with it, but he says attorneys' fees, that's a question of substantive law, and you're supposed to get the same answer whether you are in federal or state court. And that is if you are, if this court or the district court is exercising diversity jurisdiction. No, no, you're wrong on that point. You get the same answer in federal and state court whether the source of jurisdiction is diversity or the source of jurisdiction is some other source of jurisdiction. It doesn't matter the source of jurisdiction. It's common shorthand to say you're supposed to get the same answer in diversity cases, but the rule is you get the same answer, period, irrespective of whether the source of jurisdiction in federal court is diversity or federal question. I'm sorry, Your Honor, I don't agree. Well, I'm afraid you're fighting with the opinion that Judge Chemerinsky cited that I wrote. Oh, I'm sorry. I didn't even catch the case because I don't believe it was briefed. But I believe that if the court were exercising, if there were a state law claim as inclined, then the plaintiffs would have been entitled to seek fees. Okay. I want to just go back to something that I think you said before because there was a clear clash between your perspective and that of your opponents. If I understand you correctly, you're saying that neither 1021.5 or 1085 constitute a cause of action. Is that correct? That's correct. Under no circumstances? No. It's a procedural. They both are procedural mechanisms. What case would you cite or cases would you cite to that effect? I'm sorry. I don't have the cases cited for 1085, but I believe that they are in our brief as well as in the district court opinion. But one of the people, the olds, which says that it does not create substantive rights, that it enforces them. And for 1983, I think we can look at Gonzaga. From the U.S. Supreme Court, we can look at Sanchez v. Johnson. I did want to make a further point, though, because I do disagree with Dean Chemerinsky on this point. Removal from state court to federal court does not change the underlying analysis. And that is true if we look at both this court's decisions in Bass and in Gillom. In both of those cases, they were originally filed in state court and removed to federal court. And it came time to look at fees. Both courts said you look at the nature of the substantive claims and denied fees under state law. I would also like to clarify something that Dean Chemerinsky said. In the Jones case, this court actually dropped a footnote and said we're not going to consider fees under 1021.5 because none of the relief that the plaintiffs obtained was under state law, and they got fees under 1988 because they had a federal law claim. Can you help me understand what happened with respect to the waiver of 11th Amendment sovereign immunity in state court? How did that happen? Well, first of all, I'd like to make the point that all the relief that this court awarded, the providers in this case that was provided under the preliminary injunction, was awarded because this court found that the department had violated Section 30A of the Medicaid Act for failing to comply with the cost study requirement that was in Orthopedic Hospital. Then the department asserted an affirmative defense when they sought retroactive monetary relief, and that was sovereign immunity, which derives from federal law under the U.S. Constitution. And then when this court looked to see if there was waiver, it looked to this court's decision in Embry and determined that there had been waiver. And then the fact that the state sovereign immunity defense was rejected by this court does not somehow transform plaintiff's federal law claims into substantive law claims. So help me understand why there was a waiver. What happened to create the waiver? No, no, that's okay. Well, this gets a little tricky for me personally because I think that the court made a mistake. We do make mistakes. We hear that a lot. Go right ahead. I believe that Embry held that when a state removes to federal court, they waive their sovereign immunity as to suit, which makes total sense, right? You can't remove to federal court and then say, oops, you don't have jurisdiction. There's a saying, if there was no immunity before, you cannot create immunity by removal. Right, yeah, that's Labadez, right. So where we repart paths, really, is that in the Independent Living Center 2 decision, this panel decision, it found that 1085 constituted a waiver of sovereign immunity in state court, and that is not accurate. And those three cases that are cited are very complicated, but there has not been a state court of appeal decision that says when a party is seeking purely monetary damages, retroactive monetary damages, then sovereign immunity is waived. Sovereign immunity must be. So we held that section. I'm losing my numbers. Is it 1025? We held that state law overrides the state sovereign immunity. You say that's wrong, but we held that. Sounds like we held that there was a state cause of action then. We may be wrong, but it sounds like that's what we held. You just rejected our affirmative defense. All of the relief, prospective and retroactive monetary relief, was for the violation of 30A. That does not create a state cause of action somehow. But without that state statute, which we may or may not have got right, I'll be agnostic for the moment, but without that state statute, there was no state liability. Or some of the monetary relief. So some retroactive monetary relief was awarded because this court rejected our claim of sovereign immunity. But the substantive basis for all the relief was a violation of the Medicaid Act. But we're discussing attorney's fees with respect to the amount of monetary reward that was available. I'm sorry, Your Honor? We're discussing attorney's fees based upon the monetary reward that was given in the settlement. The $70 million retrospective? I'll call it in shorthand fashion, that's all 11th Amendment recovery. The $70 million, yes, Your Honor. Right. So that's available only because of what you're characterizing as our mistake in relying on state law to say that there was liability. Right, because you found that we had waived our sovereign immunity, which is an affirmative defense, not a substantive law basis for the relief. But it sounds, though, in our view, absent that state statute, there was no liability. You would not have been able to make that mistake, I would say. That's correct, Your Honor. I understand you disagree. And who knows, we may be wrong. But I also would just like to clarify a couple of things. So I know Judge Christian was asking about the motion to set aside. And you did ask for supplemental briefing. We did do that. But the intervenors did make a motion under common benefit theory that's carved out in the settlement agreement under subsection C. The plaintiffs decided not to do that. The motion to set aside actually wasn't a motion for attorney's fees. It was just to create some kind of fund. I appreciate that. Okay. And I just want to make it clear, there was no gamesmanship. This court had ordered that that be paid to the providers. The district court ordered the state to pay that to providers. And that's what we did. Well, but I didn't suggest there was gamesmanship. Far from it. It looks to me like, and I dug in pretty well into the record. It looks to me like no one anticipated this outcome, honestly, and that the district court certainly didn't. I'm convinced that she thought, at the end of the day, she was going to be able to look at fees. Well, it's actually very interesting because I went back to, in the record at page 373, both appellants said, if the $70 million common fund, which was created by efforts of counsel for plaintiffs and intervenors, is liquidated before a motion for attorney's fees is made and ruled upon, the court will have stripped itself of its ultimate ability to satisfy any award of fees. Yes. I've got those pages right here, counsel. I've been over those pages. Okay. So when I read that, I have to say. And the state made the representation. Oh, by the way, you can come back and you can award fees in a lodestar method or we can get to that later. I didn't see anywhere where the state took the position it's taking now that fees would not be available. No, because it wasn't that issue. Counsel, tell it to the guys who litigated the case for eight years. I mean, it's got to be forefront, and it's terribly concerning. Again, I am just speaking for myself, but for you to say that fees weren't at issue, really? Well, I think that what my feeler point was, Judge Christian, is that this is what they thought. And so in the settlement agreement, it is carved out for them to recover that money directly from the providers, and the intervenors did just that. Also, as we put in our supplemental absence of record, all of these counsel were paid. So they, I mean, the intervenors' counsel had an agreement with both the California Hospital Association and the California Medical Association. Mr. Friedman was paid from Mr. Carman. So looking at this now, quite frankly, I was shocked when they filed under 1021.5. This is federal question. This is federal claims in federal court, and there's no state law attorney's fees here. So they've been paid, so if they were to recover here, that money would go back to the people who paid them? Is that what's going to happen? You say they've already been paid. You're suggesting they're seeking some form of double recovery, like to be paid for their work twice? Is that what you're suggesting? Well, I don't know, Your Honor. All I'm saying is there were parties out there. The plaintiffs were willing to pay attorneys to bring this lawsuit. That's why I was talking to you about 1021.5 and what the real purpose of that is. I'm just making the point that they did receive payment. Whether it was enough or not is not mine to say. Well, do you know how much? Is it in the record in front of us how much they were paid? I do not know how much the intervenors got from the hospitals. All I know from the records is that they were paid. Do you know how much Mr. Friedman got? Well, according to Mr. Carman's declaration, at least in 2008 or 2009, he got $218,000. I don't know if he got money after that. I have no idea. There's nothing to indicate that he did in our record, right? No, but they wouldn't have any reason to tell you that. Okay. Thank you. Thank you. You've got five minutes to use as you like between the two of you. This enormously complicated case I think can be resolved by two simple, well-established points. First, if attorney's fees are available under state law in state court, then removal shouldn't change anything. LAESCA v. Wilderness Society footnote 31 says that explicitly. The second is that attorney's fees would have been recoverable here in state court. I think here Maria P. v. Riles is controlling. This is a state law cause of action. Section 1085. I think there's a lot of confusion of what the phrase cause of action means. Cause of action is a legal entitlement to relief on proof of specified facts. 1983 is a cause of action. 1085 is a cause of action. And it was the basis for this suit in state court that then got removed because it was an essential element that was federal law. Also, it was state law that determined a great deal of the recovery. As Judge Fletcher said, it was refined into state law. There was a waiver of sovereign immunity. And this Court has also said that attorney's fees are substantive state law. I know that sometimes we refer to the cause of action as a procedural device. But it doesn't mean for purposes of ERIE that it's procedural. For ERIE, the question under Guarantee Trust v. York is what's outcome determinative. And here it's clear what's outcome determinative is that there would have been recovery of attorney's fees under the state statute. A lot of the time just now was spent by issues that aren't before this Court. We were talking about what was the recovery of lawyers. And there's things in the brief that Mr. Friedman recovered saying less than $200,000 and is seeking $4 million in attorney's fees. But that's not before the Court now because that wasn't the basis of the district court judgment. The attorney for the state wants to say he's not entitled to attorney's fees because he had a pecuniary gain. That wasn't the basis of the district court decision. What we urge this Court to do is to remand the case back to the district court. And then the state can raise those arguments they want to. But what's before this Court is the district court's decision under the ERIE question, and it erred for the two reasons I said. If you were successful, what would you want this Court to do? You said you want it remanded. What do you think the ruling ought to be? I know that shouldn't be a big surprise that I would ask that. But what specifically, if you were here writing the opinion, what would you want? I'd want the Court to say the two points that I mentioned, and they explain why the district court erred. First, if attorney's fees are available under state law and state court, removal shouldn't have changed anything. And second, it appears that attorney's fees would have been available here with regard to section under the California law. Now, how that is actually awarded isn't before this Court. That would be for the district court. But I think what this Court should do is correct the error by the district court as to law in thinking that because this was Federal law and Federal court, there's no attorney's fees. This was a state law cause of action. Recovery was determined by state law. And this Court has said so often that attorney's fees are substantive state law. One other question. I gather from your perspective that subsection C of the settlement agreement in the attorney fee section really plays a little role here because you've got an A and B claimant, and I gather you believe that you could recover. If you're correct, you could recover attorney fees directly from the state without having to recover them from the previous recipients of the 38 funds. Is that right? Well, I think it's important to separate the two different arguments that are made in our brief. Okay. I have focused my entire argument in terms of the California attorney's fees statute. Right. I do so because it's a legal question. It's the NoVo review. Right. There is a second issue in terms of the common fund. And here what we believe is that what we're doing now is appealing Judge Snyder's 2010 ruling that said there could not be recovery under the common fund. We don't believe that the settlement agreement takes away the ability to appeal that 2010 ruling. We think what the settlement agreement said is if there wanted to be an application for fees under the common fund, that had to be in 30 days and that would have to be from others. What we're doing with regard to the common fund argument is appealing the 2010 ruling of Judge Snyder, and that's on an abuse of discretion standard, and we think she erred and it was an abuse of discretion. And what if we decide that that was an abuse of discretion? Then what? I didn't hear. I'm sorry, Judge Christin. What if we decide that that was an abuse of discretion? If you decide that it was an abuse of discretion, then you could remand back on that issue as well, and then it would be a question of what would be the appropriate remedy to make the plaintiffs whole. Right, given that, which has not been briefed, and in fairness, the district court hasn't touched it, but there's still jurisdiction over the commissioner, as I alluded to earlier. And so at that point, though, the district court would be trying to fashion some kind of, of course, notice would have to be given and whatnot and an opportunity to be heard, but she'd be looking for some kind of a clawback as to the folks who still remain providers in the system, correct? Absolutely. That would have to then be briefed. And the only thing I'd emphasize is that these are two independent bases for attorney's fees. Yes, yes. Either of them is sufficient. Either of them, if we prevail, would require a remand to the district court with so many issues to be resolved. But that would then be with the district court in the first instance. I'm trying to make sure you're continuing to press both, and I think you've answered that question. I am, yes, Your Honor. Thank you. I think I understand this, but I want to make it clear. If we were to agree with you that there's an entitlement to fees under A and B on your theory that this really is a state cause of action, do you need anything under the common fund under C? Well, it's an alternative theory. The recovery would be calculated separately, but we would, of course, be pleased to win under either the California attorney's fee statute or the common fund. Is there a possibility you would win more attorney's fees under C? It is possible, Your Honor. I don't see how that's going to be, because you're losing some of the providers and the common fund and so on. But they would all have to be worked out. In terms of the statutory fees, it's a traditional lodestar method, and then there would be a question of what the multiplier is. Traditionally, common fund is a percentage of the recovery. But, again, I agree with Judge Christin. None of this was addressed by the district court. And so could I just ask, because you have just a second? I guess you're over. How many years has this been pending? I think this was filed in 2008, and it's been going on since then many times in this court, many times in the Supreme Court. And the reason I'm here is that Mr. Friedman put thousands of hours in this and should recover the appropriate attorney's fees. If we want to encourage lawyers to take these kinds of cases that benefit millions of people, attorney's fees should be available. And Judge Smith raised the possibility of mediation. I don't know if we heard from the State on that or where we're leaving that, but whether that's even a viable option to go forward. No, this is out of order. Does the State have any position on the desirability of mediation? Out of order in the sense of out of the sequential order, not out of order in the sense of Robert's Rules of Order. I think it's usually the district court. I believe that's wrong, but I have other things to say about the motion. Okay, got it. Thank you, Your Honors. Both sides. Independent Living Center of Southern California submitted once again, and we're now adjourned. Thank you.
judges: W. Fletcher, M. Smith, Christen